

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. AP-77,039

**JEFFERY KEITH PREVOST, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON DIRECT APPEAL FROM CAUSE NO. 1414421
### IN THE 351ST JUDICIAL DISTRICT COURT
### HARRIS COUNTY

**NEWELL, J.,** *delivered the opinion of the unanimous Court.*

**O P I N I O N**

In March 2014, a jury convicted appellant of capital murder for intentionally and knowingly causing the May 2011 deaths of his girlfriend, Sherry White, and her son, Kyle Lavergne, during the same criminal transaction.[1] *See* TEX. PENAL CODE § 19.03(a)(7)(A).

---

[1] Appellant pleaded guilty to the indictment in front of the jury, and it returned an instructed verdict of guilty. *See In re State ex rel. Tharp*, 393 S.W.3d 751, 757 (Tex. Crim. App. 2012) ("[A] plea of guilty to a jury eliminates guilt as an issue to be determined and makes it

(continued...)

Pursuant to the jury's answers to the special issues set forth in Texas Code of Criminal Procedure Article 37.071, Sections 2(b) and 2(e), the trial judge sentenced appellant to death. TEX. CODE CRIM. PROC. Art. 37.071, § 2(g).[2]  Direct appeal to this Court is automatic.  Art. 37.071, § 2(h).  Appellant raises ten points of error.  After reviewing appellant's points of error, we find them to be without merit.  Consequently, we affirm the trial court's judgment and sentence of death.

### NOTICE OF THE STATE'S INTENT TO SEEK THE DEATH PENALTY

The factual basis for points of error one through three is appellant's allegation that the State did not file a written notice of its intent to seek the death penalty against him.[3]   In points of error one and two, appellant argues that the failure to file such written notice violated his right to due process under the Fifth and Fourteenth Amendments to the United States Constitution, as well as his right to due course of law under Article I, Section 19, of the Texas Constitution.

Appellant concedes (and the record shows) that trial counsel did not object to the lack of a filed written notice of the State's intent to seek the death penalty.  By failing to object at trial to the lack of a filed written notice, appellant forfeited appellate review of the

---

[1](...continued)
'proper for the trial judge in his charge to instruct the jury to return a verdict of guilty, charge the jury on the law as to the punishment issues and then instruct them to decide only those issues.'").

[2] Unless otherwise indicated, all future references to Articles refer to the Code of Criminal Procedure.

[3] The State does not dispute the contention that it did not file such a written notice.

allegations he presents in points of error one and two. *See* TEX. R. APP. P. 33.1(a); *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012). Points of error one and two are overruled.

In point of error three, relying on *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985), appellant contends that the State's failure to file written notice of its intent to seek the death penalty "as required by law" was "fundamental error."[4] More specifically, appellant characterizes the death penalty as a "penalty enhancement[]" in a capital-murder case, and states that written notice is thus required, as it is "for other penalty enhancements." Although he concedes that trial counsel did not object on this basis, appellant appears to argue that the nature of the alleged error is such that he may raise it for the first time on appeal.

We disagree. "In *Marin*, we differentiated between rights that are mandatorily enforced, rights subject to waiver, and rights subject to forfeiture." *Peyronel v. State*, 465 S.W.3d 650, 652 (Tex. Crim. App. 2015) (citing *Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993)). We explained that mandatorily enforced rights cannot be waived or forfeited by the parties, and that some rights, while not capable of being forfeited, may be expressly waived by a defendant. *Id*. Appellant has not shown that written notice of the State's intent to seek the death penalty is a capital-murder defendant's "mandatorily

---

[4] In *Almanza*, we interpreted Article 36.19, which governs appellate review of jury-charge error, and announced the standard of harm to be applied when an error in the jury charge had not been subject to a timely objection. *See Almanza*, 686 S.W.2d at 171. Because points of error one through three do not concern jury-charge error, *Almanza* does not apply.

enforced" right, or a right subject to waiver, such that he may challenge the lack of written notice for the first time on appeal. Accordingly, we find that appellant failed to preserve error. *See* TEX. R. APP. P. 33.1(a); *Clark*, 365 S.W.3d at 339.

Further, even assuming that appellant preserved this allegation for appellate review, his argument fails on the merits. Although Article 1.14 previously required such written notice, 1973 legislative amendments eliminated reference to giving such notice. *See Batten v. State*, 533 S.W.2d 788, 793 (Tex. Crim. App. 1976). In light of such legislative amendments, we have rejected the argument that current state law requires the State to file written notice of its intent to seek the death penalty. *See id.* We have also held that a defendant who is charged under a capital-murder indictment is effectively put on notice that the special issues under Article 37.071(b) will be submitted to the jury at punishment in the event that a guilty verdict is returned. *See Castillo v. State*, 739 S.W.2d 280, 298–99 (Tex. Crim. App. 1987); *see also Moore v. State*, 969 S.W.2d 4, 13 (Tex. Crim. App. 1998). In addition, appellant does not allege that he was surprised by the State's decision to seek the death penalty, and the record does not support such a contention.[5] Point of error three is overruled.

### CONSTITUTIONAL CHALLENGES TO CAPITAL MURDER AND DEATH PENALTY STATUTES

---

[5] The Clerk's Record of appellant's capital-murder trial is replete with defense pretrial motions indicating trial counsel's awareness that the State would seek a death sentence if the jury convicted appellant of capital murder. The Reporter's Record of voir dire similarly reflects trial counsel's awareness that the State would seek the death penalty.

In point of error four, appellant alleges that the trial court erred by failing to preclude the death penalty as a sentencing option and failing to find Article 37.071 unconstitutional under *Ring v. Arizona*, 536 U.S. 584 (2002), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Specifically, appellant argues that the jurors should have been instructed that they must find beyond a reasonable doubt the "absence of any mitigating facts." However, he also acknowledges that this Court previously rejected a similar argument in *Perry v. State*, 158 S.W.3d 438, 447–48 (Tex. Crim. App. 2004).[6] Although appellant asks us to reconsider the issue, he provides no persuasive argument or analysis to support his request. We accordingly decline his invitation. Point of error four is overruled.

In point of error five, appellant contends that the trial court erred by failing to find Texas Penal Code Sections 19.02 (murder) and 19.03 (capital murder) unconstitutional. Because appellant was charged with capital murder rather than murder, we address only appellant's allegation that Section 19.03 is unconstitutional. *See Dinkins v. State*, 894 S.W.2d 330, 340 (Tex. Crim. App. 1995) (stating that this Court will only entertain challenges to the constitutionality of a statute as it applies to a particular defendant). We have upheld the constitutionality of Section 19.03 against numerous challenges. *See, e.g.*, *Renteria v. State*, 206 S.W.3d 689, 706–07 (Tex. Crim. App. 2006); *Dinkins*, 894 S.W.2d at 340; *Johnson v. State*, 853 S.W.2d 527, 533–34 (Tex. Crim. App. 1992). To the extent that

---

[6] We also note that the Supreme Court of the United States has recently rejected a similar proposition. *See Kansas v. Carr*, No. 14-449, slip. op. at *11 (Jan. 20, 2016) ("[O]ur case law does not require capital sentencing courts 'to affirmatively inform the jury that mitigating circumstances need not be proved beyond a reasonable doubt.'").

appellant invites us to revisit these previous challenges to Section 19.03's constitutionality, we decline the invitation. To the extent that he attempts to raise any other argument in support of his allegation that Section 19.03 is unconstitutional, we find this point of error to be inadequately briefed. *See* TEX. R. APP. P. 38.1. Point of error five is overruled.

## CHALLENGE FOR CAUSE

In point of error six, appellant asserts that the trial court "arguably" abused its discretion by granting the State's challenge for cause to venire member William Hered. Although appellant acknowledges that Hered at times gave unclear answers, he asserts that, in other instances, Hered stated unequivocally that he understood the requirements of the law and would follow them. Appellant contends that Hered's responses made it "arguable that he would follow the law over his preferences in favor of life without parole," and therefore, the trial court abused its discretion by granting the State's challenge.

In a capital case in which it seeks the death penalty, the State may challenge a potential juror for cause on the ground that he has conscientious scruples regarding "the infliction of the punishment of death for crime." Art. 35.16(b)(1). A venire member is also challengeable for cause by either party if the member has a bias or prejudice against the defendant or the law on which the State or defendant is entitled to rely. Art. 35.16(a)(9), (c)(2); *see Gardner v. State*, 306 S.W.3d 274, 295 (Tex. Crim. App. 2009). However, a prospective juror who can set aside his beliefs against capital punishment and honestly answer the special issues based on the law and the evidence is not challengeable for cause.

*Hernandez v. State*, 390 S.W.3d 310, 317 (Tex. Crim. App. 2012); *see Witherspoon v. Illinois*, 391 U.S. 510, 522–23 (1980). A trial court may grant a challenge for cause against a prospective juror if bias or prejudice would substantially impair the juror's ability to carry out his oath and instructions in accordance with the law. *Feldman v. State*, 71 S.W.3d 738, 744 (Tex. Crim. App. 2002); *see Wainwright v. Witt*, 469 U.S. 412, 424 (1985).

When reviewing a trial court's decision to grant a challenge for cause, we look to the entire record to determine whether there is sufficient evidence to support the trial court's ruling and reverse only for a clear abuse of discretion. *Davis v. State*, 329 S.W.3d 798, 807 (Tex. Crim. App. 2010); *Feldman*, 71 S.W.3d at 744. Because the trial judge is in the best position to evaluate a potential juror's demeanor and responses, we review a trial court's ruling on a challenge for cause with considerable deference. *Gardner*, 306 S.W.3d at 295; *see Burks v. State*, 876 S.W.2d 877, 893 (Tex. Crim. App. 1994). We accord particular deference to the trial court's decision when a prospective juror's answers concerning his ability to follow the law are vacillating, equivocating, ambiguous, unclear, or contradictory. *Gardner*, 306 S.W.3d at 295; *Moore v. State*, 999 S.W.2d 385, 400, 407 (Tex. Crim. App. 1999).

The record shows that, during his individual voir dire by the State, Hered expressed a preference for life imprisonment over death as punishment for capital murder, emphasized that he would find it difficult to answer the future-dangerousness special issue in the affirmative, and vacillated regarding his ability to answer the special issues according to the

law and evidence. Hered ultimately acknowledged that, if he were on a jury that had convicted a defendant of capital murder, he would violate his oath by answering the special issues in a way that resulted in a life sentence, regardless of the law and the evidence. The prosecutor challenged Hered for cause.

Before ruling, the trial judge allowed trial counsel to question Hered. Under trial counsel's questioning, Hered agreed that, in "the extreme case," he could answer "yes" to the future-dangerousness special issue and "would answer [the special issues] truthfully regardless of the final outcome." Noting the contradictory responses that Hered had given to the parties, the trial judge personally questioned him about his ability to answer the special issues according to the law and evidence. Hered continued to vacillate on the subject, and ultimately stated that he could not truthfully answer the future-dangerousness special issue according to his juror's oath. The trial judge granted the State's challenge for cause.

The trial judge did not abuse his discretion in granting the State's challenge for cause. The trial judge was in the best position to evaluate Hered's demeanor and his responses, which were vacillating and contradictory. *See Gardner*, 306 S.W.3d at 295; *Moore*, 999 S.W.2d at 400, 407. His assessment is therefore entitled to special deference. *See Gardner*, 306 S.W.3d at 295; *Moore*, 999 S.W.2d at 400, 407. Point of error six is overruled.

MOTIONS FOR MISTRIAL

In points of error seven through ten, appellant alleges that the trial court erred in denying his various motions for mistrial. Mistrial is appropriate only for highly prejudicial

and incurable errors.  *Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003); *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000).  We review a trial court's denial of a motion for mistrial for an abuse of discretion.  *Simpson*, 119 S.W.3d at 272.

In points of error seven and eight, appellant argues that the trial court erred by denying his two motions for mistrial during the State's direct examination of witness Vicki Alexander.  The record shows that Alexander was appellant's half-sister and a very close friend to one of the victims, Sherry White.

Appellant first moved for a mistrial after Alexander testified that she had personal knowledge of an incident in which appellant had removed everything from the home of his second wife.  When trial counsel questioned her on voir dire, Alexander acknowledged that she had not actually witnessed the event.  Trial counsel asked "that be stricken from the record" and that the jury "be asked to disregard that comment."  The trial court "sustain[ed] the objection" and gave the requested instruction.  Trial counsel then moved for a mistrial, which the trial court denied.  On appeal, appellant argues that Alexander's comment was so inflammatory that it was impossible to withdraw the impression that he had a history of preying upon women.

Applicant's contention has no merit.  Given Alexander's lack of personal knowledge regarding the matter inquired into by the State, her comment was subject to an objection under Texas Rule of Evidence 602.  *See* TEX. R. EVID. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has

personal knowledge of the matter."). The trial court thus did not abuse its discretion by sustaining appellant's objection and instructing the jury to disregard Alexander's comment.

But the trial court also did not abuse its discretion in concluding that its prompt instruction to disregard Alexander's comment was sufficient to cure any harm that may have resulted from the objectionable testimony. Alexander's comment was not particularly inflammatory. Further, its prejudicial value was minimal compared to the other evidence that the State presented regarding appellant's future dangerousness, which included his lengthy criminal history and extensive history of violence toward women. *See Simpson*, 119 S.W.3d at 272. Point of error seven is overruled.

When Alexander's direct examination resumed, she testified about a letter that appellant had written to her from jail while awaiting trial for capital murder. In the letter, which was admitted into evidence and read aloud to the jury, appellant stated that he was sorry, referred to Alexander having lost her best friend, and asked for money. Appellant also stated that he was "sure that they [would] seek the death penalty" and that it was "only a matter of time before they execute[d] [him]." When the prosecutor asked what Alexander thought of the letter, she replied, "I was very, very angry. And when he put in the letter that he knew he was going to get the death penalty, and [sic] I said: [']I want you to get it, too.[']"

Trial counsel objected that Alexander's comment was nonresponsive, irrelevant, and improper, and he asked the trial court to instruct the jury to disregard it. The trial court

sustained the objection and gave the requested instruction, but denied trial counsel's subsequent motion for a mistrial. On appeal, appellant argues that Alexander's comment was emotionally inflammatory because it showed that his own sister wanted him to receive the death penalty. The State concedes that the statement was prejudicial, but argues that it was not so emotionally inflammatory that the trial court's curative instruction was insufficient.

We agree. As a general rule, an instruction to disregard is sufficient to cure prejudice from a nonresponsive answer given by a State's witness. *See Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App. 2010); *see also Williams v. State*, 643 S.W.2d 136, 138 (Tex. Crim. App. 1982). Here, appellant has offered no persuasive basis for concluding that the trial court's prompt instruction was insufficient to cure any harm that resulted from Alexander's objectionable testimony. Any prejudice flowing from Alexander's statement was likely minimal given the nature and extent of the evidence offered by the State at the punishment phase. *See Simpson*, 119 S.W.3d at 272–74. Point of error eight is overruled.

In point of error nine, appellant argues that "the trial court erred in denying [his] motion for a mistrial after the admission of Thomesa Hollins['s] unresponsive and prejudicial testimony." However, in his briefing, he complains only of a "prejudicial and improper question by the prosecutor." Further, appellant offers no analysis or authority for either allegation. Accordingly, this point of error is inadequately briefed. *See* TEX. R. APP. P. 38.1. Point of error nine is overruled.

In point of error ten, appellant alleges that the trial court erred in denying his motion

for a mistrial after the prosecutor asked a prejudicial question of State's witness Lane Herkoltz. Herkholtz, a former State Classification Committee member, testified about inmate custodial classification levels and the corresponding degrees of institutional restraint. The prosecutor thereafter elicited testimony from Herkholtz that the training period for prison guards had increased and currently included ethics training due to incidents of bribery. Trial counsel did not object. The prosecutor continued, "There's a high incidence of bribery of prison guards, correctional officers, inside TDC because you're the 47th out of 50 states—," before being cut off by trial counsel, who lodged a relevance objection. The trial court sustained the objection, and pursuant to trial counsel's request, instructed the jury to disregard the prosecutor's statement. Trial counsel then moved for a mistrial, which the trial court denied.

On appeal, appellant argues that the prosecutor's complained-of statement was prejudicial and improper because it implied that "the Texas Prison System is so corrupt due to bribery, that [appellant] is a greater danger to prison guards because the system of classifying inmates is not reliable." Without analysis, he argues that the prejudice from the prosecutor's question could not be cured by the judge's instruction to disregard and asserts that the trial court should have granted trial counsel's motion for mistrial. Appellant has not shown that the prosecutor's truncated statement was of such a character that the trial court's instruction to disregard was insufficient to cure any harm that might have otherwise resulted from it. In addition, any prejudice resulting from the prosecutor's statement was cured or

significantly diminished by Herkholt's preceding, unobjected-to testimony (i.e., that bribery incidents had prompted a requirement that correctional officers receive ethics training).  *Cf. Coble*, 330 S.W.3d at 282 n.82 (noting that any error in the admission of evidence is cured where the same evidence comes in elsewhere without objection).  Point of error ten is overruled.

We affirm the judgment of the trial court.

Delivered: February 24, 2016
Do Not Publish